18 N.J. Super. 552 (1952)
87 A.2d 732
ST. MATTHEW'S LUTHERAN CHURCH FOR THE DEAF, APPELLANT,
v.
DIVISION OF TAX APPEALS, STATE OF NEW JERSEY AND TOWN OF NUTLEY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 24, 1952.
Decided April 3, 1952.
*554 Before Judges EASTWOOD, BIGELOW and FRANCIS.
Mr. James H. McLeod argued the cause for the appellant.
Mr. William F. Gorman argued the cause for the respondents.
The opinion of the court was delivered by FRANCIS, J.C.C.
St. Matthew's Lutheran Church for the Deaf appeals from the determination of the Division of Tax Appeals that certain premises owned by it are not entitled to a tax exemption under R.S. 54:4-3.6, as amended.
This statute provides so far as is pertinent, as follows:
"The following property shall be exempt from taxation under this chapter:
* * * The building actually occupied as a parsonage by the officiating clergymen of any religious corporation of this state, to an amount not exceeding five thousand dollars ($5,000.00); the land whereon any of the buildings hereinbefore mentioned are erected, and which may be necessary for the fair enjoyment thereof, and which is devoted to the purposes above mentioned and to no other purpose and does not exceed five acres in extent; the furniture and personal property in said buildings if used in and devoted to the purposes above mentioned; * * * The foregoing exemptions shall apply only where the association, corporation or institution claiming the exemption owns the property in question and is incorporated or organized under the laws of this State and authorized to carry out the purposes on account of which the exemption is claimed."
It is undisputed that appellant is a religious corporation of this State and that it is the owner of premises designated as 12 Russell Avenue in the Town of Nutley, New Jersey. The premises consist of a two-story frame dwelling on a lot 50 feet by 100 feet.
The organization was created to serve the religious and spiritual needs of the deaf in New Jersey. It grew out of the recognition that deaf persons could not participate effectively or enjoy religious services conducted in the usual manner by a vocal clergyman. Lack of hearing capacity *555 made necessary the ministrations of a pastor specially trained in their means of communication.
Reverend Floyd Possehl, the only witness who testified below, is an ordained minister of the Lutheran Church. Having had the requisite special training, he was assigned to officiate in New Jersey as the pastor of the St. Matthew's Lutheran Church for the Deaf and the performance of his specialized ministerial functions among the deaf here occupies his entire time. In his capacity as such pastor appellant turned over to him for occupancy as a parsonage the taxed premises, and he asserted at the hearing that he used them solely for that purpose. The municipality presented no challenge to this claimed use.
Appellant does not own a church. The religious services in Newark are conducted in the Redeemer Lutheran Church at 664 Broadway, through the courtesy of that church. However, it has an established congregation which meets there every Sunday afternoon. Apparently the taxing agency had some information with respect to Reverend Possehl's activities and the existence of a congregation because, on cross-examination, counsel asked him if he was connected with St. Matthew's Lutheran Church at 280 Peshine Avenue, Newark, and he answered that "The congregation which used to meet at 282 Peshine Avenue is the same congregation which I now have, which meets at 664 Broadway." He then went on to say: "At the time I served the group on Peshine Avenue, I used to serve that while living in New York; and then we decided that the deaf in this area needed full-time service and so I was placed in this field."
In addition to serving the religious needs of the deaf in Newark he conducts services for those similarly afflicted in Jersey City, Elizabeth, Trenton and Paterson. This is done at the various local Lutheran churches and again such use is permitted as a matter of courtesy.
Appellant is not associated with a particular national religious corporation. However, the explanation offered was that as a religious congregation it chooses when to become *556 affiliated with the national synod and that such choice has not yet been made.
The exemption sought was denied by the Division of Tax Appeals because: "A parsonage house is not a sacred building and standing alone without any affiliations with church exempt property leaves a doubt sufficient to deny exemption."
The conclusion of the Division seems to have been that a tax-free or partially tax-free parsonage cannot exist in a non-affiliated religious corporation, unless the corporation is associated with and has control over a church building which, because of such facts, is itself tax exempt.
The effect of this ruling is that no newly created and independent religious organization could have a tax-free parsonage unless and until it acquired by some means a church building of its own. While immunity from taxation must come from express waiver of the sovereign, the language employed should not be strained to prevent the waiver.
As already indicated, the statute immunizes "the building actually occupied as a parsonage by the officiating clergyman of any religious corporation."
"Parsonage," as used by the Legislature, has not been defined by our courts. The State Board of Tax Appeals referred to it as "a house set apart for the minister's residence." City of East Orange v. Church of Our Lady of the Most Blessed Sacrament, 25 N.J. Misc. 58 (Tax App. 1948).
Webster's New International Dictionary (2d ed. unabridged) describes it as:
"The glebe (land) and house, or the house only, appropriated by a parish or ecclesiastical society to the maintenance or use of the incumbent or settled pastor or minister."
Generally the connotation adopted by Webster has the recognition of the courts. One of the clearest statements to be found on the subject appears in Assessors of Boston v. Old South Society in Boston, 314 Mass. 364, 50 N.E.2d 51 (Sup. Jud. Ct. 1943) where the court said:
*557 "* * * Nevertheless we think that as was said in Roman Catholic Apostolic Church in the Philippines v. Hastings, 5 Philippines 701-705, the `English word "parsonage" as derived from American usage must be read, not in a technical or ecclesiastical sense, but in the broad meaning of a ministerial residence used in connection with any place of worship of any denomination.' It is but a house owned, or held in trust, by a religious organization for religious uses in which a minister serving those uses lives. * * * The word `parsonage' is commonly used to denote a residence furnished by a church to a minister."
On the same subject the Supreme Court of Vermont in Wills' Estate v. Cong. Church, 63 Vt. 116, 21 A. 270 (1891), said:
"Its ecclesiastical meaning was the `glebe [or land] and house' belonging to a parish, appropriated to the maintenance of the incumbent or settled pastor of a church; but its modern general signification is in the sense of its being the residence of the parson, and it may be with land or without it."
See also: St. Joseph's Church v. Detroit, 189 Mich. 408, 155 N.W. 588 (Sup. Ct. 1915); 51 Am. Jur., Taxation, sec. 618.
Under a Canadian tax exemption act a parsonage was said to be a house or dwelling used as the residence of a minister in charge of a circuit or congregation. Re Pearson, 7 Can. L.T. 48, 13 A.L.R. 1206.
Since the evidence in the record shows, and without contradiction, that the premises in question were used solely as the place of residence of Reverend Possehl, the tax exemption must follow if he is "the officiating clergyman of any religious corporation." In construing this language it would not be reasonable to conclude that the Legislature intended to exempt the residence of an itinerant evangelist. Ham Evangelistic Association v. Matthews, 300 Ky. 402, 189 S.W.2d 524, 168 A.L.R. 1216 (Ct. Apps. 1945). Otherwise any individual whose home is in New Jersey and who incorporated here for religious purposes and who evangelized all over the country would be entitled to the immunity. Something more localized and more or less permanent, both *558 as to character of the pastor and nature of the persons served by him, must have been intended as the necessary qualifications. Consequently an "officiating clergyman" when textually associated with "parsonage" must be a settled or incumbent pastor or minister, that is, a pastor installed over a parish, church or congregation. (See Webster's New International Dictionary (2d ed.), "settled" in ecclesiastical sense; Everett v. First Presbyterian Church, 53 N.J. Eq. 500, 502, 503 (Ch. 1895); 45 Am. Jur., Religious Societies, secs. 29, 30.) And when he is an "officiating clergyman of any religious corporation" he must be serving the needs of a reasonably localized and established congregation. In this sense a congregation signifies an assemblage or union of persons in society to worship their God publicly in such manner as they deem most acceptable to Him, at some stated place and at regular intervals. Runkel v. Winemiller, 4 Harris & McHenry 429, 1 Am. Dec. 411 (Md. 1799); Ham Evangelistic Association v. Matthews, supra; Webster's New International Dictionary (2d ed. unabridged), "congregation."
Tested by these considerations Reverend Possehl is an officiating minister of a religious corporation. He is assigned as minister by the appellant indefinitely to conduct religious worship for the deaf in New Jersey. He has an established congregation in Newark which meets regularly and at a fixed place. The fact that he conducts similar services in other churches and in other parts of the state for groups of the deaf should not militate against the exemption. Neither should the fact that the church in Newark, where he is permitted to officiate with his own congregation, has a parsonage occupied by its settled minister and which is therefore exempt by the same legislation work a disqualification. There is no distinction in principle between a situation where a church building has two unconnected congregations and two incumbent ministers who live in individual residences assigned to them by the religious corporation or society they represent, and where two parsonages are created by a *559 single congregation, one for the principal minister and one for his curate. Assessors of Boston v. Old South Society, supra.
Under the circumstances appellant should have been granted the statutory exemption on the land and the building in question and on the furniture and personal property contained therein. Accordingly the determination of the Division of Tax Appeals is reversed and the record remanded with directions to grant the relief sought.