LASSER, P.J.T.C.
Plaintiff, Chester Borough, seeks review of a Morris County Board of Taxation judgment affirming local property tax exemption for 1992, as a parsonage, for a one-family house at 23 Ammerman Way, Block 4.04, Lot 15 in Chester Borough pursuant to N.J.S.A. 54:4-3.6.
The subject property is a 1.78-acre parcel on which a 4,180-square foot residence is constructed. The subject property was assessed for 1991 at:
Land $112,000
Improvements 277,100
Total $389,100
For 1992 the property was listed as exempt church property. The taxing district contested this exemption in an appeal to the Morris County Board of Taxation which affirmed the exemption “without prejudice.” The parties have stipulated that if the taxing district prevails in this action the proper assessment is $389,100. Their dispute relates solely to the parsonage exemption. The case was submitted to the court on stipulated facts pursuant to R. 8:8— 1(b).
The property is owned by World Challenge Inc., a nonprofit corporation organized under the laws of the State of Texas for religious and charitable purposes. World Challenge’s principal place of business is in Lindale, Texas.
On October 1, 1991, and throughout the year 1992, World Challenge was authorized to do business in New Jersey under the name “Times Square Church (doing business in home state as WORLD CHALLENGE, INC.)” because the name “World Challenge, Inc.” was not available for corporate use in the State of New Jersey. In its application for this approval, World Challenge stated that its activities include research, investigation and dissemination of information concerning the causes, prevention and treatment of physical and mental health problems including nar *25 cotic and alcohol addiction, personal alienation and delinquency and the promotion and perpetuation of the doctrines of Christianity as a religion including the operation of a trans-denominational church.
There is no evidence that any of World Challenge’s activities are carried on in New Jersey with the exception of its ownership of the subject property. World Challenge’s activities in evidence are principally in New York City, where it operates Times Square Church located in the Mark Hellinger Theater at 51st Street and Broadway. It also operates Timothy House on 106th Street, for former male addicts and alcoholics, Hannah House for Women on 51st Street and a facility on 41st Street, all in Manhattan. World Challenge does not operate a church in the State of New Jersey.
Times Square Church is a trans-denominational Protestant church serving a walk-in congregation which World Challenge alleges includes some New Jersey residents. Based on literature provided by World Challenge, its primary focus is to assist those on the streets of New York including the homeless, prostitutes, drug addicts, alcoholics and AIDS sufferers.
On October 1, 1991, and throughout the year 1992, the subject property was the residence of one of Times Square Church’s several ministers, Reverend Robert Phillips, a duly ordained Southern Baptist minister. As a minister, Reverend Phillips was responsible for preaching, teaching, counseling and performing administrative duties at the Times Square Church. He utilized the subject as his residence and as a place to study, prepare sermons and provide telephone counseling.

I.

In New Jersey, parsonages are exempt from local property taxation pursuant to N.J.S.A 54:4-8.6 which states:
The following property shall be exempt from taxation under this chapter: ... the buildings, not exceeding two, actually occupied as a parsonage by the officiating clergymen of any religious corporation of this State, together with the accessory buildings located on the same premises; the land whereon any of the buildings hereinbefore mentioned are erected, and which may be necessary for the fair *26 enjoyment thereof, and which is devoted to the purposes above mentioned and to no other purpose and does not exceed five acres in extent ... (emphasis added).
According to St. Matthew’s Church for the Deaf v. Div. of Tax Appeals, 18 N.J.Super. 552, 87 A.2d 732 (App.Div.1952), a parsonage is exempt from local property taxation if it is used solely as a residence of “the officiating clergyman of any religious corporation.” The officiating clergyman “must be a settled incumbent pastor or minister ... installed over a parish, church or congregation.” Id. at 558, 87 A.2d 732. A congregation is “an assemblage or union of persons in society to worship their God publicly in such manner as they deem most acceptable to Him, at some stated place and at regular intervals.” Id. at 558, 87 A.2d 732. A parsonage is usually located in close proximity to the church because the nature of religious duties typically require the minister to live nearby and parsonages are, on occasion, used for religious worship or instruction.
Taxing district contends that the church associated with the parsonage must provide a benefit to New Jersey and to do so, must be located within the State. Taxing district refers to Plainfield v. Goodwill Home and Missions, Inc., 4 N.J.Tax 537 (Tax Ct.1982) in which the court held a parsonage, not located in the same taxing district as the church, exempt under N.J.S.A. 54:4-3.6. However, the court stated “[t]he exemption is granted as a quid pro quo for an essentially public service rendered to the State and its citizens.” Id. at 540. Taxing district argues that no such public service is rendered if the church is located in New York.
In addition, taxing district contends that, although the facts suggest Reverend Phillips is an officiating clergyman, he does not service the needs of a “reasonably localized and established congregation” as referred to in St. Matthew’s, supra, 18 N.J.Super at 558, 87 A.2d 732. Taxing district argues that the parsonage exemption is granted in exchange for benefits received by the community of which the minister is a part, and that Chester Borough derives no benefit from Reverend Phillips’ activities.
*27 World Challenge contends that the subject property is entitled to property tax exemption as a parsonage under N.J.S.A 54:4-8.6. World Challenge argues that the statute does not limit the location of the church, and the fact that it is located in New York has no bearing on the exempt status of the residence of Reverend Phillips. World Challenge argues that the church does provide the intended benefit to the State of New Jersey by serving some persons who are New Jersey residents.

II.

The issue to be decided in this case is whether World Challenge is entitled to the parsonage exemption for the New Jersey residence of a minister of a church and congregation located in New York.
The parsonage exemption is a derivative exemption. A parsonage is exempt only by reason of the fact that it is actually occupied as a residence by the officiating clergymen of a church. The parsonage exemption is therefore derived from the association of the parsonage with an exempt church. If there is no exempt church there can be no parsonage exemption. Furthermore, N.J.S.A. 54:4-3.6 limits this exemption to parsonages of “the officiating clergymen of any religious corporation of this State.” (emphasis added). Although the statute may not require the religious corporation to be incorporated in New Jersey,[1] it nevertheless indicates an intent on the part of Legislature that the church be located in this State.
The Supreme Court has stated that the party claiming an exemption has the burden of establishing that it clearly qualifies for exemption and, when construing the statute which gives rise to the exemption:
all doubts are resolved against those seeking the benefit of a statutory exemption which in turn is based upon the fundamental principal of equality of the taxation burden.
*28 [Teaneck Tp. v. Lutheran Bible Institute, 20 N.J. 86, 90, 118 A.2d 809 (1955) (citations omitted)]
Since the parsonage exemption is derived from the exemption for the church, where there is no church in New Jersey, there is no exempt New Jersey church to support a parsonage exemption. Therefore, strictly construing N.J.S.A 54:4-3.6, as I must, the parsonage exemption may not be granted in this case.
Though World Challenge was authorized to conduct religious activities in New Jersey on October 1, 1991, it does not maintain an established church in the State. There is no evidence of benefit to New Jersey or its citizens to justify the taxpayers of Chester Borough bearing the tax burden of the subject residence. Reverend Phillips does not conduct religious worship in New Jersey. Without a New Jersey church, the parsonage provides no benefit to the State and an exemption is therefore, not warranted.
The theory that religious exemptions are given to avoid entanglement between church and state as expressed in Walz v. Tax Commission of the City of New York, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970) is not applicable here since the church in question is not located in New Jersey.
I note the decision in General Conference of Church of God — 7th Day v. Carper, 192 Colo. 178, 557 P.2d 832 (1976), in which the Colorado Supreme Court held that a religious corporation with 5,000 members, only 4% of which were Colorado residents, was entitled to property tax exemption on property used for administrative and publishing activities. In its decision, the Colorado Supreme Court rejected that state’s prior case law holding that religious exemptions are based on the benefit received by the residents of that state. However, I find that New Jersey case history, some of which is subsequent to this Colorado case, and legislative intent require an analysis of benefit received by New Jersey and its citizens in determining whether property tax exemption should be granted.
Although not raised by World Challenge, I note that denial of exemption to a minister’s residence where there is no church in *29 New Jersey is not violative of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. The Equal Protection Clause requires all persons similarly situated be treated alike and that no State shall “deny to any person within its jurisdiction the equal protection of the laws.” See City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313, 320 (1985); Plyler v. Doe, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786, 798 (1982) (quoting F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989, 990-91 (1920)). However, “[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.” Plyler, supra, 457 U.S. at 216-17, 102 S.Ct. at 2394-95, 72 L.Ed.2d at 798 (citing Tigner v. Texas, 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124, 1128 (1940)). In Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), the United States Supreme Court stated, when referring to the Equal Protection Clause, “the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways ... [It] does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute.” 404 U.S. at 75-76, 92 S.Ct. at 253-54, 30 L.Ed.2d at 229 (citations omitted).
Therefore, economic or social legislation will be sustained as long as the classification drawn by the statute is rationally related to a legitimate state interest. However, not all classifications are entitled to such a deferential standard. To analyze whether a classification violates the Equal Protection Clause, three different tests have evolved; the “rational basis” test, which is a general test; the “governmental objectives” test, which is an intermediate test and, the “strict scrutiny” test which is applied to legislation which operates to the disadvantage of a “suspect class” *30 or impinges upon a fundamental constitutional right[2]. The burden is on the party challenging the classification to prove that it violates the Equal Protection Clause. Chevron U.S.A., Inc. v. Perth Amboy, 9 N.J.Tax 205, 225-26 (Tax Ct.1987); see also Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 522-23, 57 S.Ct. 868, 878-79, 81 L.Ed. 1245, 1255 (1937); Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 364, 93 S.Ct. 1001, 1006, 35 L.Ed.2d 351, 358 (1973); Taxpayers Ass’n of Weymouth Tp. v. Weymouth Tp. 80 N.J. 6, 34, 364 A.2d 1016 (1976), cert. denied sub nom., Feldman v. Weymouth Tp., 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977).
In this case I find it to be the legislative intent to distinguish between parsonages associated with exempt churches located in New Jersey and parsonages serving churches not located in New Jersey. This classification is without regard to where the religious corporation is incorporated.
The New Jersey Legislature exempted parsonages from real property taxation in order to facilitate the efforts of religious corporations to serve the citizens of New Jersey and to some extent, relieve the State of its burden to care for the social welfare of its citizens. Grace & Peace Fellowship Church v. Cranford Tp., 4 N.J.Tax 391, 399 (Tax Ct.1982). The legislative intent of the parsonage exemption statute is to assist churches in this State by granting exemption to parsonages of “officiating clergyman of any religious corporation of this State.” N.J.S.A 54:4-3.6 (emphasis added).
The Legislature was not required to enact this exemption for parsonages and chose to do so, only in this limited fashion.[3] *31 This classification strikes a balance between the State’s constitutional requirement to equally distribute its tax burden [4] and the State’s interest in facilitating religious corporations’ efforts to serve the citizens of New Jersey.
Because the Equal Protection Clause was intended as a restriction on state legislative action inconsistent with fundamental constitutional principles, the United States Supreme Court has “treated as presumptively invidious those classifications that disadvantage a ‘suspect class,’ or that impinge upon the exercise of a ‘fundamental right’.” Plyler, supra, 457 U.S. at 216-17, 102 S.Ct. at 2394-95, 72 L.Ed.2d at 799. In this ease, the classification does not involve a suspect class or impinge on the exercise of a fundamental right. The parsonage exemption is statutory, not derived from a fundamental right of religious corporations to be entitled to exemption. Further, freedom of religion is not affected by this classification because it treats all religions equally.
Where a fundamental right, or suspect or semi-suspect class is not at issue, a classification is constitutional if it is rationally related to a legitimate governmental objective. Regan v. Taxation With Representation of Washington, 461 U.S. 540, 547, 103 S.Ct. 1997, 2001, 76 L.Ed.2d 129,137-38 (1983); Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 461-66, 101 S.Ct. 715, 722-25, 66 L.Ed.2d 659, 667-70 (1981); Vance v. Bradley, 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171, 176-77 (1979); Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501-02 (1970). The governmental objective of this classification is to avoid requiring New Jersey taxpayers to bear the financial burden of religious corporations which do not serve the citizens of this State. Classifications are customarily used as a “device for fitting tax programs to local needs and usages in order to achieve an equitable distribution of the tax burden.” McKenney v. Byrne, 82 N.J. 304, 315-16, 412 A.2d 1041 (1980) (quoting *32 Madden v. Kentucky, 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590, 593 (1940)). Given the State’s obligation to equally distribute its tax burden, I find that this classification does serve a legitimate and important governmental objective.
Does the classification have a rational basis and is it substantially related to the governmental objective? This test requires that “the classification (1) must not be palpably arbitrary or capricious, and (2) must have a rational basis in relation to the specific objective of the legislation.” N.J. Restaurant Ass’n. v. Holderman, 24 N.J. 295, 300, 131 A.2d 773 (1957).
I find that limiting exemption to parsonages serving churches located in New Jersey not to be palpably arbitrary or capricious. In addition, I find that there is a rational relationship between this classification and the legislative objective of encouraging churches located in New Jersey. The exemption is given in return for the benefit conferred on the State. To derive the intended benefit, the church associated with the parsonage must be able to provide services or benefits to New Jersey to give rise to the exemption. Grace & Peace Fellowship Church, supra, 4 N. J.Tax at 400. A church located on 51st Street and Broadway in Manhattan does not.
The classification made in this case differs from the one the United States Supreme Court found violative of the Equal Protection Clause in WHYY, supra n. 1. In WHYY, property tax exemption was denied for a television transmission tower located in New Jersey, of a public, non-commercial television station broadcasting cultural, recreational and educational programs, solely on the ground that the owner was not incorporated in New Jersey. This classification was held to violate constitutional equal protection requirements because a foreign television station corporation qualified to do business in New Jersey is entitled to be treated the same as a New Jersey television station corporation for local property tax exemption purposes.
The Supreme Court decision stated “that [WHYY] has not been ‘accorded equal treatment, and the inequality is not because of the slightest difference in [New Jersey’s] relation to the decisive transaction [the location of the transmission tower in New Jersey], *33 but solely because of the different residence of the owner’.” 393 U.S. at 120, 89 S.Ct. at 288, 21 L.Ed.2d at 245 (quoting Wheeling Steel Corp. v. Glander, 337 U.S. 562, 572, 69 S.Ct. 1291, 1297, 93 L.Ed. 1544, 1551 (1949)). In addition, the Supreme Court stated “[WHYY] is not a case in which the exemption was withheld by reason of the foreign corporation’s failure or inability to benefit the State in the same measure as do domestic nonprofit corporations.” 393 U.S. at 120, 89 S.Ct. at 287, 21 L.Ed.2d at 245.
To the contrary, the subject case turns on a classification resulting from the “difference in [New Jersey’s] relation to the decisive transaction”; the absence of benefit to New Jersey where the church and the congregation is not located in this State. I find that there is no inequality of treatment by limiting the parsonage exemption to parsonages serving churches and congregations located in New Jersey.
Although the endeavor of World Challenge directed to the uplifting of New York “street-people” is a worthy one, strict construction of the parsonage exemption, as is proper and required, precludes exemption of the New Jersey residence of one of the ministers of this New York church. Judgment will be entered setting aside the exemption and the 1992 assessment shall be as set forth below in accordance with the stipulation of the parties:
Land $112,000
Improvements 277,100
Total $389,100

 See WHYY, Inc. v. Borough of Glassboro, 393 U.S. 117, 89 S.Ct. 286, 21 L.Ed.2d 242 (1968).

 See Piscataway Tp. Bd. of Ed. v. Caffiero, 86 N.J. 308, 322, 431 A.2d 799 (1981); San Antonio Ind. School Dist. v. Rodriguez, 411 U.S. 1, 16-17, 93 S.Ct. 1278, 1287-88, 36 L.Ed.2d 16, 33 (1973).

 There is a similarity between exemptions and subsidies. There are numerous examples of benefits provided only to New Jersey residents. See Rubin v. Glaser, 83 N.J. 299, 306, 416 A.2d 382 (1980) (denying a homestead rebate to a non *31 resident for vacation home in New Jersey); Clarke v. Redeker, 406 F.2d 883 (8th Cir.1969) and Kelm v. Carlson, 473 F.2d 1267 (6th Cir.1973) (upholding lower college tuition for residents).

 See N.J. Const. art. VIII, § I, par. 1(a); New Jersey State League of Municipalities v. Kimmelman, 105 N.J. 422, 427-36, 522 A.2d 430 (1987).