AXELRAD, J.T.C.
In this local property tax matter plaintiff, Friends of Ahi Ezer Congregation, Inc., a New Jersey corporation organized for the purpose of non-profit religious worship, appeals the judgment of the Monmouth County Board of Taxation affirming the 1995 assessment of $191,600 on its property designated as 283-287 Yorke Avenue, Block 73, Lot 10.03 in Long Branch (the “subject property”). Plaintiff claims that this property is exempt from local property tax as a parsonage under N.J.S.A. 54:4-3.6 and, in the alternative, contests its valuation. The subject property was transferred to plaintiff from Ahi Ezer Congregation, a New York *593 corporation, by deed recorded on November 29, 1993. The improvements consist of a bi-level home which is used as the residence of its leader, Joseph Maslaton, and his family. There, Rabbi Maslaton provides instruction for boys from the Ohel Simha synagogue, located approximately one mile away from the subject property. Rabbi Maslaton currently pays rent of $1,200 per month, and previously paid $1,000 per month, to the grantee’s mortgagee for the use of the subject property.
Three Saturday mornings per month Rabbi Maslaton assists Rabbi Choueka, the officiating Rabbi of Ohel Simha, by conducting the Bible (Torah) reading portion of the religious service at the Ohel Simha synagogue. Rabbi Maslaton spends thirteen to fifteen hours per week preparing for these recitations. He also conducts religious classes at the synagogue.
In addition, Rabbi Maslaton conducts religious services every Friday afternoon at the Westwood Hall Hebrew Nursing Home in Long Branch, a non-exempt entity owned by Ahi Ezer Yeshiva of New York. He also visits the institution on a regular basis to ensure that the kitchen is run in a “Kosher fashion.” Rabbi Maslaton is paid by the synagogue and the nursing home for his services.
N.J.S.A. 54:4-3.6 provides in relevant part:
The following property shall be exempt from taxation under this chapter ...; the buildings, not exceeding two, actually occupied as a parsonage by the officiating clergymen of any religious corporation of this State, together with the accessory buildings located on the same premises; the land whereon any of the buildings hereinbefore mentioned are erected, and which may be necessary for the fair enjoyment thereof, and which is devoted to the purposes above mentioned and to no other purpose and does not exceed five acres in extent; ... provided ... the buildings, or the lands on which they stand, or the associations, corporations or institutions using and occupying them as aforesaid, are not conducted for profit. ... The foregoing exemption shall apply only where the association, corporation or institution claiming the exemption owns the property in question and is ... authorized to carry out the purposes on account of which the exemption is claimed.
The pertinent factors to be satisfied in this case before according tax exempt status to the subject property as a parsonage pursuant to N.J.S.A. 54:4-3.6 are: (1) the building(s) must be occupied as a parsonage by the officiating clergyman of a religious corporation; *594 (2) the entity claiming the exemption must not be conducted for profit, nor may the building or land be conducted for profit; (3) the entity claiming the exemption must own the property; and (4) the entity must be authorized to carry out the purposes of a parsonage.
This statute requires that the buildings be occupied as a parsonage by the officiating clergymen of a religious corporation of this State. A parsonage has been defined as a “house owned, or held in trust, by a religious organization for religious uses in which a minister serving those uses lives.” St. Matthew’s Lutheran Church for the Deaf v. Division of Tax Appeals, 18 N.J.Super. 552, 557, 87 A.2d 732 (App.Div.1952), quoting Assessors of Boston v. Old South Soc’y in Boston, 314 Mass. 364, 50 N.E.2d 51, 52 (1943).
In the present case, the subject property was owned by plaintiff, a non-profit religious corporation, on October 1,1994, the valuation date for the 1995 tax year. As a result, in order for the subject property to be considered a parsonage, it must be occupied by an officiating clergyman of plaintiff, Friends of Ahi Ezer Congregation, Inc. Ehrlich v. Passaic City, 15 N.J.Tax 561, 566 (1995). No proofs were presented as to the legal relationship of Ohel Simha synagogue and the New Jersey or New York Ahi Ezer corporate entities, although both rabbis testified that Ohel Simha is essentially the “Jersey shore” branch of the New York Ahi Ezer congregation. Furthermore, according to Rabbi Maslaton, Friends of Ahi Ezer Congregation, Inc. is in theory the same entity as the New York religious corporation and was incorporated in this State under a different legal name in order for his residence to qualify for tax exempt status.[1] Assuming arguendo that the “congregation” Rabbi Maslaton serves at the Ohel Simha synagogue is that of Friends of Ahi Ezer Congregation, Inc., the *595 owner of his residence, it must still be determined whether Rabbi Maslaton is an “officiating” clergyman. An “officiating clergyman” has been defined as “a settled or incumbent pastor or minister, that is, a pastor installed over a parish, church or congregation.” St. Matthew’s, supra, 18 N.J.Super. at 558, 87 A.2d 732. The American Heritage Dictionary, (2d ed. 1982) defines “officiat[e]ing” as “1. To perform the duties and functions of an office or position of authority. 2. To serve as a priest or minister at a religious service.”
Consistent with this definition, in determining whether a clergyman is an “officiating clergyman” of a religious corporation in this state, the court must look at the extent of the clergyman’s activities. Goodwill Home and Missions, Inc. v. Garwood Bor., 281 N.J.Super. 596, 658 A.2d 1330 (App.Div.), appeal dismissed, 143 N.J. 317, 670 A.2d 1059 (1995); Shrine of Our Lady of Fatima v. Mantua Tp., 12 N.J.Tax 392 (1992). If the duties sound like those performed by congregational leaders of all religious denominations, the clergyman is considered an officiating clergyman of the religious corporation.
In Shrine of Our Lady of Fatima, supra, taxpayer sought a parsonage exemption for property occupied by an ordained deacon of the Latin Rite Movement, Shrine of Our Lady of Fatima. 12 N.J.Tax at 394. The deacon performed Mass at his property twice a month for an average of eight to ten members of a 20-member congregation, performed the Sacraments of Holy Eucharist and Extreme Unction, visited persons in nursing homes once a week or every two weeks and distributed Holy Communion to them, conducted various community services, and provided for food distribution. His administrative work entailed supervising his congregation, attending board meetings, signing checks, paying bills and completing forms and reports. All other masses and religious services for the deacon’s congregation which were not held at his residence were conducted at the church under the direction of Father Lovett, the pastor and administrator of the taxpayer and the superintendent and spiritual overseer of the congregation. Based upon these facts, the court found that the *596 ordained deacon was not the officiating clergyman of the church and, as such, his residence was not exempt as a parsonage. “The vast bulk of religious services for the ... congregation [were] conducted by Father Lovett ... Father Lovett [was] the officiating clergyman for this religious corporation, ...” Id. at 397.
In Goodwill Home, supra, taxpayer sought an exemption for property occupied by its minister. The minister was initially appointed as administrative director and, when he assumed his official duties as pastor, became directly responsible for taxpayer’s religious services and activities. He personally took on responsibility for morning prayers and led at least one service per week, was responsible for the content and supervision of Bible study classes and took part in them on an “as-needed” basis, was responsible for seeing that the chapel services were properly conducted, counseled congregants, and determined whether certain chapel groups were qualified to lead a service at the mission. In the clergyman’s own words, he “took on the direct supervisory responsibility of pastor rather than having somebody ... helping me with it.” 281 N.J.Super. at 603, 658 A.2d 1330. Since the minister’s duties were in the nature of those performed by congregation leaders of all religious denominations, the court concluded that he was the officiating clergyman of the taxpayer. Id. at 604, 658 A 2d 1330.
The well settled rule in New Jersey is that the party claiming an exemption has the burden of establishing that it is entitled to tax exempt status. A statute which grants an exemption, such as N.J.S.A. 54:4-3.6, must be strictly construed and “all doubts are resolved against those seeking the benefit of [the] ... exemption.” Chester Bor. v. World Challenge, Inc., 14 N.J.Tax 20, 27 (1994), quoting Teaneck Tp. v. Lutheran Bible Inst., 20 N.J. 86, 90, 118 A.2d 809 (1955); see also Shrine of Our Lady of Fatima, supra, 12 N. J.Tax at 396 (citing Boys’ Club of Clifton v. Jefferson, 72 N.J. 389, 398, 371 A.2d 22 (1977)). Thus, the burden of proof is upon plaintiff to establish that Rabbi Maslaton is an *597 officiating clergyman of the congregation which is served by Ohel Simha synagogue.[2] Neither law nor logic supports that position.
There is no doubt that Rabbi Maslaton contributes to the synagogue on a regular basis by reading from the Torah, which is an integral part of the Saturday morning Sabbath service, and providing religious education to youth and adult congregants, and that Rabbi Choueka relies heavily upon his assistance. From the facts presented, however, the court finds that Rabbi Maslaton is not an officiating clergyman of this congregation. The most telling comment was made by Rabbi Choueka, who has been the rabbi at Ohel Simha synagogue for 15 years and, in fact, is related to Rabbi Maslaton. He testified that his job responsibilities include teaching, conducting services and giving sermons, counseling, etc., and that he is “the only officiating Rabbi at Ohel Simha” (emphasis added). On the other hand, in Rabbi Maslaton’s own words, his duties consist of teaching and performing Bible recitations at religious services. These recitations — Torah readings— are also performed by lay congregants on a volunteer basis and 25 to 30 boys a year who are each becoming a Bar Mitzvah. Rabbi Maslaton does not have the direct supervisory responsibilities afforded to Rabbi Choueka, is not the “spiritual overseer of the congregation,” and does not render the services ordinarily “performed by congregational leaders of all religious denominations.” Goodwill Home, supra, 281 N.J.Super. at 603, 658 A.2d 1330; Shrine of Our Lady of Fatima, supra, 12 N.J.Tax at 396. The record contains no evidence that Rabbi Maslaton has direct responsibility for taxpayer’s religious services: he does not preside over the service, present the sermon, or have any obligation to assure that the service is properly run. Moreover, there was no testimony that Rabbi Maslaton has a position of authority or decision-making role in the synagogue or that his duties include counseling congregants or officiating at weddings and funerals. The bulk of religious services at Ohel Simha synagogue are *598 conducted by, and are the responsibility of, Rabbi Choueka, who is clearly the spiritual leader and pulpit rabbi of the congregation. Therefore, Rabbi Maslaton is not an officiating clergyman of plaintiff at the Ohel Simha synagogue.
In addition, Rabbi Maslaton’s services and activities at the nursing home do not render him an officiating clergyman of that institution. Even assuming that the nursing home can be considered a congregation, which has been defined as “an assemblage or union of persons in society to worship their God publicly in such manner as they deem most acceptable to Him, at some stated place and at regular intervals,” St. Matthew’s, supra, 18 N.J.Super. at 558, 87 A.2d 732, the nursing home is not a church, or in this case, a synagogue. “[A] church [or synagogue] is something more than merely a building in which the actual religious services are held; a church [or synagogue] is a building set apart for public worship, ... but the conclusion does not follow that every place in which religious services are conducted is a church [or synagogue].” State v. Cameron, 100 N.J. 586, 595, 498 A.2d 1217 (1985). Clearly, the nursing home is not a synagogue as it is not set apart for public worship. More importantly, the nursing home is not an exempt entity. Therefore, since the parsonage exemption is derived from the association of the parsonage with an exempt church, and because the nursing home is neither a church nor exempt from property taxation, the subject property cannot be accorded an exemption as a parsonage.
In view of the foregoing, Friends of Ahi Ezer Congregation, Inc. should not be accorded a parsonage exemption for the property occupied by Rabbi Maslaton since he is not an “officiating clergyman of a religious corporation of this State.” As such, plaintiffs claim for exemption of the subject property under N.J.S.A. 54:4-3.6 must be denied. Under the circumstances, there is no reason for the court to address the issue of Rabbi Maslaton’s payment of rent at this time. The valuation issue will be scheduled for trial.

 In order to receive an exemption for the subject property it is not essential that Ohel Simha synagogue be owned by plaintiff, Friends of Ahi Ezer Congregation, Inc. Plaintiff, however, must be a reasonably localized and established congregation operating out of Ohel Simha synagogue. St. Matthew's, supra. The record is insufficient on this issue.

 As previously discussed, the court is operating under the premise that the "congregation” Rabbi Maslaton serves at the Ohel Simha synagogue is that of Friends of Ahi Ezer Congregation, Inc.