NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

# TAX COURT OF NEW JERSEY

**JOSEPH M. ANDRESINI, P.J.T.C.**
PRESIDING JUDGE



125 State Street, Suite 100
Hackensack, NJ 07601
Tel: (609)815-2922 ex. 54570
Fax: (201)996-8052

August 7, 2018

Michael I. Schneck, Esq.[1]
The Schneck Law Group, LLC
301 South Livingston Avenue
Suite 105
Livingston, NJ 07039

William F. Rupp, Esq.
Chasan Lamparello Mallon & Cappuzzo, PC
300 Lightning Way
Suite 200
Secaucus, NJ 07094

> Re: Mikvah Association v. Township of Teaneck
> Block 1905, Lot 11.01
> Docket Nos. 015784-2014; 012594-2015; 010909-2016; 012807-2017[2]

Dear Counsel:

This letter constitutes the court's opinion on the parties' respective summary judgment motions. Defendant's, Township of Teaneck's (hereinafter "Township") claims it is entitled to summary judgment because the above referenced property, a residence (hereinafter "Subject") is ineligible for a parsonage, or charitable, property tax exemption. Plaintiff, Mikvah Association (hereinafter "Association"), argues for summary judgment in its favor because the Subject qualifies for tax exemption under either basis, as a matter of law, under N.J.S.A. 54:4-3.6. For the

---

[1] Kevin S. Englert, Esq., of Englert Law Firm, LLC, argued the matter on behalf of Plaintiff.
[2] The parties stipulated to consolidation of 2014-2017 tax years for purposes of this summary judgment.

*

reasons set forth below, the court finds that the subject property is entitled to exemption under N.J.S.A. 54:4-3.6.

Facts and Procedural History

The undisputed facts are taken from the certifications in support of each party's motion for summary judgment.

Association is a nonprofit entity organized under Title 15 of the New Jersey statutes.[3] Its certificate of incorporation states it purpose is to

> operate and maintain ritualarium(s) Mikvah(s) in Bergen County to meet the needs of those who uphold Jewish laws of family purity (Taharath Hamispacha); generally to do any and all acts suitable, proper and conductive to the successful conduct of a ritualarium(s) Mikvah(s), including by way of elucidation but without limitation the following activities: to solicit membership of any Jew or Jewess, to lease or procure office space, material and equipment for the carrying out of any purpose of this corporation; to lease, purchase, mortgage or deed in trust real estate for use as a ritualarium(s) Mikvah(s); to hire personnel for the successful operation of a Mikvah, to do all other acts consistent with the laws of the State of New Jersey and of the aforesaid purposes of this Corporation.

Association operates a mikvah, the Jewish ritual bathhouse, at property located on 1726 Windsor Road, in the Township, identified as Block 1905, Lot 11.01 (hereinafter the "Facility"). Members of the Jewish community (over 900 women and 500 men), from the Township, Bergenfield, and the surrounding neighborhoods frequent the Facility on a regular basis, and utilize it to fulfill their ritual immersion obligations. Rituals at the mikvah are conducted on a regular basis, with as many as 20-60 per night. The Facility is open every night after sundown with exception of two fast days. No admission fee is charged, however, a suggested donation, which varies depending on the particular ceremony to be performed, is sought. The Facility and the mikvah ceremony operates

---

[3] Title 15 was repealed and replaced by Title 15A effective 1983.

2

under the supervision of the local rabbinical community. The Facility has been granted tax exemption by the Township for all tax years at issue here.

Association also owns the Subject, which is on the same street as the Facility, and located at 1636 Windsor Road. A single family residential dwelling, it serves as the personal residence for the Association's Ritual Director, Miriam Feman, and her family, who reside there rent-free. Prior to moving into the Subject, Ms. Feman and her family resided at the second floor of the Facility.

Ms. Feman is member of the Orthodox Jewish community. She graduated from Machon Chana Seminary in Brooklyn, New York, where she studied the Jewish religion, and, under the tutelage of local rabbis, was extensively trained in the laws of family purity and ritual immersion. She is a trained "shomeret," which literally translates as "guardian," and as such she accompanies women in their mikvah observance. She is also trained in handling issues pertaining to women with special needs, such as first time patrons, those with physical disabilities, or psychological issues.

Ms. Feman oversees the use of the mikvah and assists women in their mikvah observance at the Facility. She serves as the onsite liaison and representative of the clergy at the mikvah.[4] She works in the Facility about two-to-four hours per night, six to seven times each week, but is on call every day at all times. Although many patrons come to Facility by appointment, situations can arise requiring Ms. Feman's personal involvement such as during Sabbath, when Orthodox Jewish patrons will not drive or make phone calls, or during after-hours, and they need to use the mikvah. Consequently, it is necessary that she be available to assist these patrons, and, therefore, her location in the immediate vicinity of the Facility is imperative. This is also because as a

---

[4] Besides Ms. Feman, there are 21 employees on Mikvah's payroll.

3

member of the orthodox Jewish community, she is not permitted to drive on Sabbath. Although Ms. Feman works at the Facility, she also uses the Subject to perform mikvah-related work, such as counseling patrons, scheduling appointments, and responding to patrons' telephone calls and e-mails, and to store mikvah supplies, including religious implements used in the mikvah rituals.

For the tax years at issue, the Subject property was assessed as follows:

Tax Year 2014:

| | |
|---|---|
| Land: | $324,100 |
| Improvements: | $192,900 |
| Total: | $517,000 |

Tax Years 2015-2017:

| | |
|---|---|
| Land: | $256,600 |
| Improvements: | $217,300 |
| Total: | $473,900 |

On October 30, 2013, Association filed an Initial Statement of Organization Claiming Tax Exemption for the Subject with the Township's assessor. The form claimed exemption on grounds the Subject belonged to a religious organization. The assessor denied such application on grounds the Subject was not used for an exempt purpose. Association appealed the exemption denial to the Bergen County Board of Taxation ("County Board") in 2014, and in each year thereafter seeking a tax exemption under N.J.S.A. 54:4-3.6. The County Board affirmed the assessor's exemption denial for each tax year. Association filed timely appeals therefrom to this court.

Township then moved for summary judgment, arguing that the Subject is used as Ms. Feman's personal residence; she is not a member of clergy; and her presence is not integral to, or necessary for, the operation of mikvah at the Facility. Rather, her presence it simply a convenience to the mikvah's patrons.

4

Association cross-moved for summary judgment claiming it has three alternative reasons for why the Subject property is entitled to the exemption under N.J.S.A. 54:4-3.6: (1) the Subject satisfies the statutory criteria for exemption as a building actually used in the work of an entity organized exclusively for religious purposes; (2) the Subject satisfies the statutory criteria for exemption as parsonage since the mikvah's patrons are its congregation and Feman is acting in the capacity of officiating clergyperson; or (3) the Subject satisfies the statutory criteria for exemption as a building actually used in the work of an entity organized exclusively for the moral and mental improvement of men and women.

After oral argument, the parties, at the court's direction, submitted supplemental briefing on the issue of whether Association is a religious corporation and what, if any, are the established standards for the operation of mikvahs. Association claims that since N.J.S.A. 54:4-3.6 does not require that an entity have been incorporated under Title 16 of New Jersey statutes (which governs formation and operations of religious corporations), it is entitled to a tax exemption as a non-profit entity dedicated to observance of a religious ritual.

<u>Legal Analysis and Conclusions of Law</u>

The court should grant a summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." <u>R.</u> 4:46-2. Our Supreme Court has set the following standard for summary judgment:

> [W]hen deciding a motion for summary judgment under <u>Rule</u> 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient

5

> to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).]

Generally, "a party cannot successfully resist the motion by relying either on the conclusionary allegations or the denials of [the movant's] pleadings."  Pressler & Verniero, Current N.J. Court Rules, comment 1 on R. 4:46-5 (2018).  However, if, considering the burden of persuasion at trial and making all legitimate inferences in favor of moving party, the evidence provided in support of the motion requires a determination by a trier of fact, then the facts raise a genuine issue.  R. 4:46-2.  At the summary judgment stage, in connection with factual issues, "[i]t [i]s not the court's function to weigh the evidence and determine the outcome but only to decide if a material dispute of fact exist[s]." Gilhooley v. County of Union, 164 N.J. 533, 545 (2000).  A party is entitled to a plenary hearing unless the movant has met its "burden of showing clearly the absence of a genuine issue of material fact." Parks v. Rogers, 176 N.J. 491, 502 (2003).  Thus, if the opposing party makes a prima facie showing of a genuine dispute, summary judgment may not be appropriate. See Allstate Ins. Co. v. Fisher, 408 N.J. Super. 289, 302 (App. Div. 2009). Here, it is undisputed that Association is a tax exempt entity for property tax purposes under N.J.S.A. 54:4-3.6.  All of the facts regarding the location, ownership, and occupants of the Subject are undisputed.  Similarly, the parties do not dispute the veracity of any facts asserted in the certifications provided in support of their respective motions as to the nature and scope of the Ritual Director's duties at, and for the purposes of the operation of the Facility, and in connection with the mikvah ritual.  They are obviously at odds in their respective conclusions from these facts, with the Township claiming the facts demonstrate that the Subject is being used for convenience only, and Association claiming that these facts evidence the Subject as a parsonage or as being used for religious purposes.  However, each party's differing conclusion from the facts do not render those facts,

which are material to those conclusions, as genuinely disputed.  As such, the court finds that the matter can be decided on summary judgment.

**ANALYSIS**

Our Constitution requires all real property to be assessed for taxation under general laws and by uniform rules.  N.J. Const., art. VIII, § I, para. 2.  Exclusion from taxation may only be granted by a general law and the burden is on the applicant for exemption to demonstrate it meets the criteria.  Teaneck v. Lutheran Bible Inst., 20 N.J. 86, 90 (1955).  Because an exemption statute creates a deviation from the principle that all property owners must shoulder their fair portion of the local property tax burden, such a statute must be construed strictly.  Abunda Life Church of Body, Mind & Spirit v. Asbury Park City, 18 N.J. Tax 483, 485 (1999) (citing N.J. Carpenters Apprentice Training & Educ. Fund v. Borough of Kenilworth, 147 N.J. 171, 177-78 (1996); Princeton Univ. Press v. Princeton, 35 N.J. 209, 214 (1961)).  "[A]ll doubts are resolved against those seeking the benefit of a statutory exemption." Borough of Chester v. World Challenge, Inc., 14 N.J. Tax 20, 27 (1994) (citing Teaneck, 20 N.J. at 90).

In applying these principles, the court should not distort the language of the statute or the legislative intent behind it.  Boys' Club of Clifton, Inc. v. Jefferson, 72 N.J. 389, 398 (1977).  The construction of the statute, while strict, should be reasonable and consistent with the underlying legislative intent.  Int'l Sch. Servs., Inc. v. W. Windsor Tp., 412 N.J. Super. 511, 524 (App. Div. 2010) (citing Princeton v. Tenacre Found., 69 N.J. Super. 559, 563 (App. Div. 1961)), aff'd, 207 N.J. 3 (2011).

The controlling statute is N.J.S.A. 54:4-3.6, which allows in pertinent parts exemption from taxation to:

[A]ll buildings actually used in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women and children, provided that if any portion of a building used for that purpose is leased to profit-making organizations or is otherwise used for purposes which are not themselves exempt from taxation, that portion shall be subject to taxation and the remaining portion only shall be exempt; all buildings actually used in the work of associations and corporations organized exclusively for religious purposes, including religious worship, or charitable purposes, provided that if any portion of a building used for that purpose is leased to a profit-making organization or is otherwise used for purposes which are not themselves exempt from taxation, that portion shall be subject to taxation and the remaining portion shall be exempt from taxation, and provided further that if any portion of a building is used for a different exempt use by an exempt entity, that portion shall also be exempt from taxation; . . .

the buildings, not exceeding two, actually occupied as a parsonage by the officiating clergymen of any religious corporation of this State, together with the accessory buildings located on the same premises; the land whereon any of the buildings hereinbefore mentioned are erected, and which may be necessary for the fair enjoyment thereof, and which is devoted to the purposes above mentioned and to no other purpose and does not exceed five acres in extent; . . .

provided, in case of all the foregoing, the buildings, or the lands on which they stand, or the associations, corporations or institutions using and occupying them as aforesaid, are not conducted for profit, except that the exemption of the buildings and lands used for charitable, benevolent or religious purposes shall extend to cases where the charitable, benevolent or religious work therein carried on is supported partly by fees and charges received from or on behalf of beneficiaries using or occupying the buildings; provided the building is wholly controlled by and the entire income therefrom is used for said charitable, benevolent or religious purposes; . . .

The foregoing exemption shall apply only where the association, corporation or institution claiming the exemption owns the property in question and is incorporated or organized under the laws of this State and authorized to carry out the purposes on account of which the exemption is claimed…

[N.J.S.A. 54:4-3.6.]

8

I.       Parsonage exemption.

N.J.S.A. 54:4-3.6 allows property tax exemption to no more than two "buildings," which are "actually occupied as a parsonage by the officiating clergymen of any religious corporation of this State, together with the accessory buildings located on the same premises."  Any exemption is also conditioned upon "the buildings, or the lands on which they stand, or the" claimant entity "using and occupying them . . . are not conducted for profit," and further, the claimant entity should be (1) the property owner; (2) "incorporated or organized under" New Jersey laws,[5] and (3) "authorized to carry out the purposes on account of which the exemption is claimed."  Id.

In analyzing the statute, the court will look at its language and if a plain reading of its text allows only one unambiguous interpretation, the court should follow it, unless a different meaning is expressly indicated.  Pub. Serv. Elec. & Gas Co. v. Twp. of Woodbridge, 73 N.J. 474, 478 (1977).  The plain reading of pertinent portions of N.J.S.A. 54:4-3.6 renders five elements necessary for parsonage exemption: (1) residence is actually occupied as a parsonage by the officiating clergymen of any religious corporation; (2) the property does not exceed five acres in extent and is devoted solely to parsonage purposes; (3) the religious corporation owns the property; (4) the religious corporation is authorized to carry out the purposes of a religious corporation; (5) the property and the religious corporation are not conducted for profit.

There is no dispute that Association, a nonprofit corporation, owns the Subject, which is less than five acres in size, and is not used for profit. Because the statute gives parsonage

---

[5] The requirement for incorporation in the state of New Jersey was invalidated by the U.S. Supreme Court in WHYY, Inc. v. Glassboro, 393 U.S. 117 (1968).

exemption to a "religious corporation," and the parsonage exemption is derivative, the initial issue is whether Association is such a religious corporation.[6]

Religious societies or congregations are incorporated under, and governed by the provisions of Title 16 of the New Jersey statutes. However, the court finds persuasive Association's contention that its incorporation under Title 15 (now Title 15A) is not fatal to its claim for parsonage exemption.

Association correctly notes that N.J.S.A. 54:4-3.6 does not specify that a non-profit corporation which is incorporated to operate as, and operates for, religious purposes, be formed under Title 16 of the New Jersey statutes. Moreover, before its repeal, Title 15, specifically, N.J.S.A. 15:1-21, gave "religious societies the choice of incorporating under either Title 15 or Title 16." See Bible Presbyterian Church, Inc. v. Harvey Cedars Bible Conf., Inc., 84 N.J. Super. 441, 450 (App. Div. 1964). Additionally, the Title 15's successor, Title 15A allows a corporation "organized for any purpose for which" it could be incorporated under Title 16, the choice to incorporate or re-incorporate under Title 15A. See N.J.S.A. 15A:1-5.

Association points out that the existence of Title 16 does not have any independent significance, and that tying the exemption to the residence and the status of the claimant is unconstitutional under N.J. Tpk. Auth. v. Wash. Tp., 16 N.J. 38, 45 (1954). Since the court agrees with Association that the plain language of N.J.S.A. 54:4-3.6 does not contain a definite requirement for incorporation under Title 16, and the fact that Association is incorporated under Title 15 (now Title 15A) alone is not determinative of whether or not a parsonage exemption is available to plaintiff, it is unnecessary to address the constitutionality argument.

---

[6] See Chester Borough, 14 N.J. Tax at 27 (The parsonage exemption is . . . derived from the association of the parsonage with an exempt" religious organization. "If there is no exempt [religious organization] . . . there can be no parsonage exemption.").

10

However, the statute clearly establishes that one of the requirements for a parsonage exemption is that the residence must be occupied by <u>officiating clergymen</u> of a religious corporation. N.J.S.A. 54:4-3.6 (emphasis added). This is where Association's position is troublesome. According to established law, "'officiating clergyman' when textually associated with 'parsonage' must be a settled or incumbent pastor or minister, that is, a pastor installed over a parish, church or congregation. . . [and as] 'officiating clergyman of any religious corporation' he must be serving the needs of a reasonably localized and established congregation." <u>St. Matthew's Lutheran Church for Deaf v. Div. of Tax Appeals</u>, 18 N.J. Super. 552, 558 (1952). "In this sense a congregation signifies an assemblage or union of persons in society to worship their God publicly in such manner as they deem most acceptable to Him, at some stated place and at regular intervals." <u>Id.</u> Association argues that the mikvah's patrons are its congregation and the functions performed by Ms. Feman are equivalent to that of an officiating clergyperson. Therefore, it is instructive to look at other cases that explored this issue to gather what is normally expected of an officiating clergyperson within the meaning of the statute and compare it to Ms. Feman's role at the mikvah.

"[I]n determining whether a clergyman is an 'officiating clergyman' of a religious corporation in this state, the court must look at the extent of the clergyman's activities." <u>Friends of Ahi Ezer Congregation, Inc. v. Long Branch City</u>, 16 N.J. Tax 591, 595 (1997). "If the duties sound like those performed by congregational leaders of all religious denominations, the clergyman is considered an officiating clergyman of the religious corporation." <u>Id.</u> Clearly, "the exemption should not be denied on the basis of a categorical restriction of its availability, in the case of Jewish congregations, to rabbis. Instead, as with other members of the clergy, the character and extent of an individual's activities within the congregation will determine if the Parsonage

11

Exemption applies." Congregation Ahavath Torah v. Englewood City, 21 N.J. Tax 318, 323 (2004).

Some of these expected duties in cases involving the Jewish faith are to "teach, lead, or participate in religious services, to give sermons, or to officiate at the Congregation's weddings, funerals, and bar mitzvahs." City of Long Branch v. Ohel Yaacob Congregation, 20 N.J. Tax 511, 519 (2003). In Mesivta Ohr Torah of Lakewood v. Twp. of Lakewood, 24 N.J. Tax 314 (2008), an exemption was granted to both the residence of a rabbi and an assistant rabbi, where the rabbi conducted prayer services, gave sermons, attended and spoke at ceremonies, such as weddings, Bar Mitzvahs, and circumcisions, and answered "questions that members of the congregation have concerning Jewish law," and the assistant rabbi, also deemed to be an officiating clergyperson, fulfilled rabbinical duties when the rabbi was unavailable. Id. at 334-35. In Congregation Ahavah Torah, a parsonage exemption was granted to the congregation's cantor who was responsible for "directing of liturgical prayer; conducting various prayer services; assisting in the conduct of daily services; participating in weddings and funerals; and reading or chanting from sacred texts for holidays." 21 N.J. Tax at 319. In another case involving a Christian mission, Goodwill Home & Missions, Inc. v. Garwood Borough, the mission's administrative director's residence was granted a parsonage exemption where he assumed the official duties of a pastor by conducting morning prayers, leading service, teaching and supervising a Bible class, overseeing chapel service, and interviewing people wanting to do chapel services. 281 N.J. Super. 596, 603-04 (App. Div. 1995).

The established rule is that the court has no business telling a religious organization how to practice its faith. Id. at 604 ("Governmental inquiry into how a minister allocates the performance of his or her religious duties is an improper incursion into the activities of a religious organization, an intrusion uncalled for by the statute and proscribed by constitutional protection.").

However, the cases cited above provide an overview of a general understanding of what an officiating clergyperson does, regardless of title, and there are simply no facts showing that Ms. Feman acted in such capacity. Association admits that a mikvah immersion is an important ritual performed by observant followers of the Jewish faith. Yet, there is no allegation that mikvah patrons are members of a separate religious group that primarily worships God by performing regular ritual immersions. Instead, the mikvah is supervised by a number of local rabbis, and Plaintiff admits that the mikvah ultimately serves the observant members of those rabbis' congregations. Even assuming that the mikvah's patrons are its congregation, comparing Ms. Feman's role to that of an officiating clergyperson of Jewish faith doesn't fare well for Association: Ms. Feman neither officiates or assists during bar mitzvahs, funerals, or marriages, nor leads religious sermons, conducts prayer service, or teaches about the Jewish faith. Instead, under the guidance of local rabbis, Ms. Feman serves as the chief custodian and assistant to the mikvah's patrons for their ritual immersions, schedules mikvah appointments, and provides counseling to women regarding the proper use of the mikvah. The role Ms. Feman plays in the life of the Jewish patrons of the mikvah simply does not rise to that of an officiating clergyperson in the Jewish religion. Ms. Feman's job is important, if not central to the operation of the mikvah, but it is not the job an officiating clergyperson does or is expected to do. This finding forecloses the availability of a parsonage exemption to the subject property. Accordingly, the court does not need to inquire further into whether the mikvah's patrons are to be considered Association's congregation.

II.     Exemption on Other Grounds.

The unavailability of parsonage exemption does not preclude the court from considering other grounds for granting the residence the exempt status. Specifically, N.J.S.A. 54:4-3.6 provides an exemption for "all buildings actually used in the work . . . of associations and corporations organized exclusively for the moral and mental improvement of men, women and children, . . . associations and corporations organized exclusively for religious purposes, including religious worship, or charitable purposes." Id. The exemption is only available to the portions of the property devoted to nonprofit activities. Id. New Jersey case law has a well-established two-pronged test to determine whether an exemption is available for the residential property belonging to and actually used in the work of the organization whose other property is granted an exemption: "first, whether the residence is predominantly used as an integral part of the operation of the exempt organization, rather than being primarily a convenience to the tenant, and second, whether the provision of the residence is reasonably necessary for the proper and efficient operation of the exempt organization." Ohel Yaacob Congregation, 21 N.J. Tax at 272; Clinton Tp. v. Camp Brett-Endeavor, Inc., 1 N.J. Tax 54, 60 (1980) (Tax 1980); Pompton Lakes Sr. Citizens Hous. Corp. v. Pompton Lakes Borough, 16 N.J. Tax 331, 338 (1997). See also Teaneck v. Teaneck, 20 N.J. at 90-91.

In every exemption case, the inquiry is fact specific. In Teaneck, 20 N.J. at 87-88, the Supreme Court denied exemption to three buildings owned by Lutheran Bible Institute, a religious organization, that were used to house four ordained ministers that taught students at the institute and provided chapel services to the students. The court found that the buildings served no religious purpose because they were primarily used as a residence for the ministers, where students could come to discuss "matters of mutual interest and concern if they so desire[d]." Id. Stated in other

14

words, the main purpose of the premises was to provide housing for the Institute's teachers, a great benefit for the teachers, but not a use furthering the Institute's religious purpose in any way. Thus, strictly residential use that does not benefit the organization would not make a property eligible for such exemption. However, the case at hand is distinguishable because the circumstances here are different. Here, the predominant utility is to have the mikvah's Ritual Director available at all times, and the fact that she lives there with her family is incidental to the use of the premises as a location where the mikvah's Ritual Director performs her mikvah-related work and is on call and nearby 24/7. The instructive case is <u>Princeton v. Tenacre Found.</u>, 69 N.J. Super. 559 (App. Div. 1961). There, the director of a nonprofit nursing home operated under the auspices of the Christian Science Church resided in a substantial single-family seven or eight-room house with two and one-half baths built as a residence for the director of the Foundation. <u>Id.</u> at 561. The board of trustees informally "required" the director to live on the Foundation grounds. <u>Id.</u> at 562. The director was responsible for maintenance and operation of the facilities, hiring and transportation of help, supervision of the day and night staffs of 100 persons, supervision of the maintenance personnel, and was on call virtually 24 hours each day. <u>Id.</u> He also used the residence for Foundation-related purposes, such as storing files and Foundation property, performing official entertainment, and holding staff meetings. <u>Id.</u> Although the Foundation's property concededly qualified for an exemption under N.J.S.A. 54:4-3.6 as belonging to an organization "organized exclusively for religious, charitable or hospital purposes, or for one or more of such purposes," the municipality argued that the director's residence did not qualify for an exemption because it was not actively and exclusively used in the work of Foundation. <u>Id.</u> at 562-63. In that case, the court granted the exemption to the residence of the director as property actually used in the operation of the exempt

15

organization because it was essential to the operation of the Foundation that the director be available on the premises 24 hours a day to serve the Foundation's needs. Id. at 565.

Similarly, here, Ms. Feman, the mikvah's Ritual Director, is responsible for maintenance and operation of the mikvah in the Facility and is on call 24/7. Her proximity to the Facility allows her to assist mikvah's patrons during all hours especially because it is not uncommon for patrons to require use of the mikvah during non-regular hours, or for after-hour Sabbath immersion since certain daily activities, such as making phone calls or driving, are prohibited on Sabbath. Consistent with this necessity to be close to the mikvah, for many years, Ms. Feman resided in the Facility where the mikvah is performed, and only moved out when the growing number of patrons required both the expansion of Facility and the purchase of the Subject to house her. Her position as the Ritual Director, and her duties towards the mikvah and patrons comports to the religious requirements in this regard which is monthly attendance and bathing in its waters, "a cornerstone of the observance of the Jewish religion," according to the certifying Rabbi, according to whom, it is customary to appoint a woman who is knowledgeable in the laws and customs of the preparation for and observance of the immersion ritual as the Ritual Director, who must be trained by the rabbinic leadership of the community and is required to be physically proximate to the mikvah and readily accessible to participants.

It is undisputed that Township granted the exemption under N.J.S.A. 54:4-3.6 to the mikvah facility. The facts presented to the court make it clear that Ms. Feman's continuous round-the-clock availability is essential to the mikvah, and her residing nearby is not a matter of convenience for Ms. Feman, but rather a necessity for the proper and efficient operation of the mikvah. Thus, the Subject is "actually used" in the operation of mikvah and qualifies for an exemption under N.J.S.A. 54:4-3.6.

16

## Conclusion

Because the subject property is reasonably necessary for the proper and efficient operation of the mikvah, Defendant's motion for summary judgment is DENIED and Plaintiff's motion for summary judgment is GRANTED.  An order consistent with this opinion shall be entered in the record.

Very truly yours,

Honorable Joseph M. Andresini, P.J.T.C.

17