[821 NE2d 130, 787 NYS2d 705]

In the Matter of WORD OF LIFE MINISTRIES, Petitioner, v NASSAU COUNTY et al., Respondents. (Proceeding No. 1.)

In the Matter of WORD OF LIFE MINISTRIES, Respondent, v INCORPORATED VILLAGE OF FREEPORT, Appellant. (Proceeding No. 2.)

Argued October 20, 2004; decided November 30, 2004

## POINTS OF COUNSEL

*Forchelli, Curto, Schwartz, Mineo, Carlino & Cohn, LLP,* Mineola (*Richard A. Blumberg* and *Jessica L. Jamron* of counsel), for appellant. I. The assistant pastors are not officiating clergymen within the meaning of RPTL 462. (*Matter of City of Lackawanna v State Bd. of Equalization & Assessment,* 16 NY2d 222; *People ex rel. Untermyer v McGregor,* 183 Misc 218, 269 App Div 779, 295 NY 237; *Matter of Holy Trinity Orthodox Church of E. Meadow v O'Shea,* 186 Misc 2d 880.) II. The applications submitted by respondent state that the assistant pastors are not officiating clergymen. III. There is nothing in the lower court proceeding to support a finding that the determinations of the Village Assessor and Village Board of Review were illegal, arbitrary, capricious or unauthorized. (*Arverne Bay Constr. Co. v Thatcher,* 278 NY 222; *Matter of Temple Israel of Lawrence v Plaut,* 6 AD2d 886; *Matter of Point Lookout Civic Assn. v Zoning Bd. of Appeals of Town of Hempstead,* 94 AD2d 744; *Matter of Campus v Delany,* 62 AD2d 990; *Corter v Zoning Bd. of Appeals for Vil. of Fredonia,* 46 AD2d 184; *Matter of Agoglia v Glass,* 35 AD2d 954; *Matter of Hiscox v Levine,* 31 Misc 2d 151; *Matter of General Cinema Corp. v Foley,* 60 AD2d 856; *Shoreham-Wading Riv. Cent. School Dist. v Town of Brookhaven,* 107 AD2d 219; *Moses v Koch,* 97 Misc 2d 243.) IV. The below CPLR article 78 proceeding was improper. (*Matter of Krugman v Board of Assessors of Vil. of Atl. Beach,* 141 AD2d 175.)

*Joseph P. Infranco,* Mineola, and *Charles E. Holster III,* for respondent. I. The parsonage exemption provided in Real Property Tax Law § 462 for property utilized by "officiating clergymen" clearly extends to residences of full time, ordained clergy who officiate in all aspects of religious services. (*Leader v Maroney, Ponzini & Spencer,* 97 NY2d 95; *Matter of Hapletah v Assessor of Town of Fallsburg,* 79 NY2d 244; *People ex rel.*

*Watchtower Bible & Tract Socy. v Haring,* 8 NY2d 350; *Matter of Legion of Christ v Town of Mount Pleasant,* 1 NY3d 406; *Matter of Holy Trinity Orthodox Church of E. Meadow v O'Shea,* 186 Misc 2d 880.) II. The appeal raises a hypothetical question and improperly seeks to have the judiciary intrude into ecclesiastical functions. (*Lemon v Kurtzman,* 403 US 602; *Serbian E. Orthodox Diocese v Milivojevich,* 426 US 696; *Corporation of Presiding Bishop v Amos,* 483 US 327.) III. Appellants are seeking review of factual findings by the trial court which were upheld by the Appellate Division. (*Beatty v Guggenheim Exploration Co.,* 223 NY 294; *White v Adler,* 289 NY 34; *El Gemayel v Seaman,* 72 NY2d 701; *Matter of Rashbaum v Tax Appeals Trib. of State of N.Y.,* 229 AD2d 723.) IV. A CPLR article 78 proceeding was the proper method to challenge appellant's determination. (*Matter of Dudley v Kerwick,* 52 NY2d 542; *Matter of Krugman v Board of Assessors of Vil. of Atl. Beach,* 141 AD2d 175.) V. If the Appellate Division is reversed, this case should be remanded for consideration of the application of estoppel, constitutional violations, and any other issues not considered in the original proceeding.

### OPINION OF THE COURT

G.B. SMITH, J.

The issue here is whether renewal applications for four properties located in the Village of Freeport, Nassau County, are entitled to tax exemption pursuant to Real Property Tax Law § 462. We affirm the order of the Appellate Division holding that the properties are tax exempt.

On September 24, 1999, respondent, Word of Life Ministries, submitted to Nassau County renewal applications for tax exempt status for four properties on the ground that they were used as residences by "officiating clergymen." The applications mistakenly answered "yes" in response to the question whether the properties were used for purposes other than as residences of "the officiating clergy"—stating that they were used as the residences of assistant pastors. Before the tax authorities made a decision, respondent corrected the applications before the County to state that the properties were used as residences for officiating clergymen. After reviewing the applications, Nassau County concluded that the properties were not tax exempt under RPTL 462. Respondent submitted similar applications to the Village of Freeport on July 25, 2000, but the Village rejected respondent's attempt to correct its mistake. These applications were denied on or about August 15, 2000.

Respondent filed a CPLR article 78 petition against the County on July 17, 2000, and against the Village of Freeport on December 6, 2000. On March 20, 2001, the proceedings were consolidated.

After examinations before trial and a review of documentary evidence, Supreme Court determined that the applications were improperly denied, annulled the county and village decisions and granted the applications. Only the Village appealed to the Appellate Division, which affirmed the determination (*Matter of Word of Life Ministries v Nassau County*, 309 AD2d 760 [2d Dept 2003]). This Court granted the Village leave to appeal.

RPTL 462 states that "property owned by a religious corporation while actually used by the officiating clergymen thereof for residential purposes shall be exempt from taxation." At issue here is whether the men living at the four residences in the Village of Freeport are "officiating clergymen."

The Village asks us to construe the term "officiating clergymen"—undefined in the statute* —as limited to the "spiritual and settled leader" of a church. In effect, the Village argues that there will frequently be only one officiating clergy person per congregation—the cleric who has ultimate supervisory authority over the other clergy. In the Village's view, an "assistant pastor," by virtue of title alone, can rarely constitute officiating clergy within the meaning of the statute.

We decline to read the statute so narrowly. True, "officiating clergymen" does not mean all clergymen. But neither does it mean only one clergy person who presides over subordinates. Rather, we construe "officiating" as looking outward to a cleric's relationship with his or her congregation, and not to the hierarchical structure of the various clergy persons. Thus, a full-time, ordained member of the clergy who presides over an established church's ecclesiastical services and ceremonies, conducts weddings and funerals, and administers the sacraments of the church—in short, one who "officiates"—is entitled to the statutory tax exemption.

In arguing for a more restrictive definition, the Village points to New Jersey case law, which the Village contends interprets a

---

* Supreme Court looked for guidance to Religious Corporations Law § 2, which defines the term "clergyman" as "a duly authorized pastor, rector, priest, rabbi, and a person having authority from, or in accordance with, the rules and regulations of the governing ecclesiastical body of the denomination or order, if any, to which the church belongs, or otherwise from the church or synagogue to preside over and direct the spiritual affairs of the church or synagogue."

similar New Jersey statute to limit that state's parsonage exemption to the "settled leader" of a church (*see* NJ Stat Ann § 54:4-3.6 [exempting from taxation "the buildings, not exceeding two, actually occupied as a parsonage by the officiating clergymen of any religious corporation"]). In truth, however, New Jersey's test imposes no such restriction and the Village's position is based on a misreading of that state's precedent.

The Village cites *Trenton Church of Christ v City of Trenton* (3 NJ Tax 267, 274 [1981]) for the proposition that a pastor seeking a parsonage exemption in New Jersey must be the "settled leader" of a church, which the Village takes to mean the supervising cleric. The Village cites several cases in which exemption was denied because the person was not the settled leader: *Friends of Ahi Ezer Congregation, Inc. v Long Branch City* (16 NJ Tax 591, 597-598 [1997] [rabbi who assisted the settled leader in various functions such as reading from the Torah and conducting religious classes not entitled to exemption]), *Shrine of Our Lady of Fatima v Mantua Twp.* (12 NJ Tax 392, 395, 399 [1992] [an appointed deacon whose duties included conducting mass twice a month and visiting nursing homes to serve Holy Communion not entitled to an exemption as an officiating clergyman]), and *City of Long Branch v Ohel Yaacob Congregation* (20 NJ Tax 511, 519 [2003] [visiting pastors not officiating clergymen]).

In *St. Matthew's Lutheran Church for the Deaf v Division of Tax Appeals* (18 NJ Super 552, 87 A2d 732 [1952]), the New Jersey Appellate Division granted tax exemption for a building occupied by a minister assigned to conduct worship services for the deaf. The court held that tax exemption could not be granted to the residence of an itinerant preacher but that an officiating clergy person "must be a settled or incumbent pastor . . . installed over a parish, church or congregation" and "must be serving the needs of a reasonably localized and established congregation" (18 NJ Super at 558, 87 A2d at 735). In *Congregation Ahavath Torah v Englewood City* (21 NJ Tax 318, 320 [2004]), the New Jersey Tax Court, in holding that the residences of a synagogue's rabbi and cantor both qualified for the parsonage exemption, explained that "it is not status or title, but the services performed that determine if the exemption will apply." Thus, New Jersey looks, as we do, to the character and "extent of the clergyman's activities" (*Friends of Ahi Ezer Congregation, Inc. v Long Branch City,* 16 NJ Tax at 595 [1997]; *see also Shrine of Our Lady of Fatima v Mantua*

*Twp.*, 12 NJ Tax 392, 397-398 [1992]). "If the duties sound like those performed by congregational leaders of all religious denominations, the clergyman is considered an officiating clergyman of the religious corporation" (*Ahi Ezer*, 16 NJ Tax at 595).

Those lower New York courts that have addressed the issue have uniformly applied the correct test. Thus, in *Matter of Holy Trinity Orthodox Church of E. Meadow v O'Shea* (186 Misc 2d 880 [Sup Ct, Nassau County 2001]), the court held that the church choir director was not an officiating clergyman because, although he was ordained as a subdeacon and cantor within the church, he could not officiate at weddings or funerals and his sole ecclesiastical responsibility was to provide liturgical music for these ceremonies. By contrast, in *Temple Beth Sholom, Inc. of Roslyn, N.Y. v Nassau County Dept. of Assessment, Bur. of Exemptions* (2001 NY Slip Op 50147[U] [Sup Ct, Nassau County]), an assistant rabbi was held to be officiating clergy where he was employed full time by the synagogue; conducted secondary services on Sabbath and all holidays; taught Sisterhood and Men's Club classes during the year; supervised youth groups; conducted weddings, funerals, and baby namings when the rabbi was not available; and visited members in hospitals and homes after the death of family members (*see also Full Gospel Tabernacle of Long Is., N.Y., Inc. v Board of Assessor of Town of Brookhaven*, NYLJ, Jan. 25, 1982, at 15, col 6 [Sup Ct, Suffolk County] [assistant pastor entitled to exemption as officiating clergy]; 5 Ops Counsel SBEA No. 54, at 105 [1976] [suggesting that an officiating clergy is someone ordained who "preach(es) on a regular basis"]).

We therefore conclude that respondent is entitled to a parsonage exemption for each of the challenged properties, declining to hold that the mere designation of one of the pastors here as the "Senior Pastor" means that as a matter of law he and he alone is the "officiating" clergy. All of the pastors, including those living at the residences in question, were ordained and held no outside employment. All took part in church services and shared in the preaching. All provided marital counseling, officiated at marriages and funerals, and administered the sacraments recognized by the church. They also ministered to the youth of the church and took part in outreach to the homeless. Indeed, the pastors ministered to at least 2,000 people weekly. Because the pastors' salaries are low, respondent provides them with housing, located near the church. We thus reject the Vil-

lage's argument that the residents in question are not officiating clergy.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges CIPARICK, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur.

Order affirmed, with costs.