*275 OPINION OF THE COURT
Thomas A. Dickerson, J.
Sephardic Congregation: Posttrial Decision
In this most recent case[1] seeking an exemption for real property taxes this court must determine, after a trial held on September 16, 2006, whether the petitioner Sephardic Congregation of South Monsey is entitled to a 100% real property tax exemption pursuant to RPTL 420-a and 462.[2] The Congregation
The petitioner, a religious corporation,[3] is the owner of the subject property located at 7 Balanchine Court, Monsey, New York.[4]
The Nature of the Subject Property The petitioner is a Sephardic Jewish Congregation, and the subject property is used as the Congregation’s synagogue as *276 well as a residence for Rabbi Arash Hakakian who prepares religious services and lectures for the Congregation.
The Synagogue
The Synagogue occupies the lower level of the subject property.[5]
The Living Room
The middle floor of the subject property consists of a living room, dining room, kitchen and study.[6] The Bedrooms
The top floor consists of the bedrooms used by the rabbi, his wife and five children.
The Study
Rabbi Hakakian testified that he prepares for his religious services and lectures in the study as well as meeting with members of the Congregation.[7] The Dining Room
Rabbi Hakakian stated that, occasionally, he has meetings in the dining room, rather than the study, if the circumstance is more casual, particularly if more than one person is involved.[8] The rabbi testified that, on average, the meetings in the dining room take place approximately twice a week.[9] The Kitchen
He stated that the kitchen on the middle floor is for his family’s personal use. However, once a month, the kitchen is used to cook food for some members of the Congregation for a Kiddush where the food is served to members of the Congregation on the ground floor.
The Rabbi’s Duties
Rabbi Hakakian testified that he conducts services in the mornings and evenings, gives classes and lectures, performs marriages, circumcisions, funerals and offers counseling services. He stated that he devotes, approximately, 40 hours per week to his rabbinical duties and is available to members of the Congregation on a 24-hour basis by telephone.[10]
*277 The Yeshiva of North Jersey
In addition, Rabbi Hakakian is employed as a full-time special education teacher at the Yeshiva of North Jersey, where he works from Monday through Thursday from, approximately, 8:20 a.m. to 4:40 p.m. and on Fridays from, approximately, 8:20 am. until 12:30 pm.[11] The rabbi receives an annual salary of, approximately, $74,000 per year.
The RPTL 420-a Exemption Pursuant to RPTL 420-a (1) (a):
“Real property owned by a corporation or association organized or conducted exclusively for religious, charitable, hospital, educational, or moral or mental improvement of men, women or children purposes, or for two or more such purposes, and used exclusively for carrying out thereupon one or more such purposes either by the owning corporation or association or by another such corporation or association as hereinafter provided shall be exempt from taxation as provided in this section.”
Hence, in order to be entitled to a tax exemption, the petitioner must demonstrate that it is (1) organized exclusively for tax exempt purposes and that (2) the property in question is used exclusively for exempt purposes. (See Matter of Holy Spirit Assn. for Unification of World Christianity v Tax Commn. of City of N.Y., 55 NY2d 512 [1982].) It is the second prong of the statutory test, whether or not the subject property is used exclusively for tax exempt purposes, that the respondents allege cannot be met by the petitioner.[12]
The Term “Exclusive”
The term “exclusive” as is appears in RPTL 420-a has been “broadly defined to connote ‘principal’ or ‘primary’ such that purposes and uses merely ‘auxiliary or incidental to the main and exempt purpose and use will not defeat the exemption.’ ” (See Matter of Yeshivath Shearith Hapletah v Assessor of Town of Fallsburg, 79 NY2d 244, 249 [1992].)
Necessary and Reasonably Incidental The Court in Hapletah (supra at 250-251), stated,
“the subject housing facilities are occupied exclusively by staff, teachers, Rabbis, and families, *278 members of which are either students at the yeshivah or parents of the students too young to attend the school without parental supervision. If petitioner was unable to provide residential housing accommodations to its faculty, staff, students and their families, its primary purposes of providing rigorous religious and educational instruction at the yeshivah would be seriously undermined. Thus, these housing facilities are ‘necessary and reasonably incidental’ to the primary purpose of the Woodbourne facility” as a religious educational facility. (See e.g., Matter of Gemilas Chasudim Keren Eluzer Inc. v Assessor of Town of Ramapo, 5 Misc 3d 1026LA], 2004 NY Slip Op 51566[U], *8 [Sup Ct, Rockland County 2004] [“Unfortunately, the petitioner does not meet the second test for tax exemption because the subject property is not primarily used for a tax exempt purpose”].)
Subject Property Is Not Used Primarily for Tax Exempt Purposes
Upon careful scrutiny of all testimony and evidence presented by the parties in this matter, this court determines that the petitioner does not meet the second test set forth in RPTL 420-a since the subject property is not primarily used for charitable/religious purposes pursuant to the statute.
The Middle and Upper Floors
Although the first floor of the subject property is used as a synagogue for the congregation, both the middle and upper floors of the property are used primarily as the residence for the rabbi, his wife and five children. While it is true that the study and, occasionally, the dining room and kitchen, all on the middle floor, are used to assist the rabbi with some of his duties, we find that the use of the subject property, which is principally and primarily as a residence for the rabbi and his family, is not necessary and incidental to the operating and running the synagogue.
Hence, this court finds that the petitioner is not entitled to an RPTL 420-a tax exemption.
RPTL 462 — The Rectory or Parsonage Exemption
RPTL 462 states in pertinent part, “In addition to the exemption provided in section four hundred twenty-a of this article, property owned by a religious corporation while actually used by the officiating clergyman thereof for residential purposes shall be exempt from taxation.”
*279 An Officiating Clergyman — The Parties’ Positions
It is the petitioner’s position that Rabbi Hakakian is the officiating clergyman since he works for the Congregation, approximately, “40 to 45 hours per week and that he performs all of the functions of an officiating clergyman, including conducting services, performing marriages, circumcisions, officiating at funerals, giving lectures and answering questions relating to religious law.”[13] The petitioner insists that it is not necessary for the rabbi to be a full-time clergyman “so long as he performs the services required by his congregation.”[14]
Status as Officiating Clergyman
The respondents are not disputing that Rabbi Hakakian is the rabbi for the Congregation, “leading prayer services, classes, and providing other services as needed.”[15] They do dispute his status as an officiating clergyman of the Congregation because he has full-time outside employment as a special education teacher at a school, Yeshiva of North Jersey, receiving an annual salary of $74,000 per year from his position.
Therefore, it is the respondents’ position that Rabbi Hakakian is not a full-time officiant but rather a part-time clergyman and not entitled to a RPTL 462 exemption.

Word of Life Ministries

Clearly, the issue to be determined is whether Rabbi Hakakian is an “officiating clergyman” for the Congregation. The Court of Appeals recently addressed this issue in Matter of Word of Life Ministries v Nassau County (3 NY3d 455, 458 [2004]) wherein the status of four associate pastors as “officiating clergymen” was examined.
Defining “Officiating Clergyman”
Recognizing that the term “officiating clergyman” is undefined in the statute, the Court of Appeals (at 458) stated,
“we construe ‘officiating’ as looking outward to a cleric’s relationship with his or her congregation . . . Thus, a full-time, ordained member of the clergy who presides over an established church’s ecclesiastical services and ceremonies, conducts weddings and funerals, and administers the sacraments of the church — in short, one who ‘officiates’ — is *280 entitled to the statutory exemption.”
Full-Time Member of the Clergy
The Court of Appeals stated in Matter of Word of Life Ministries (supra, 3 NY3d at 458) that one of the tests of an “officiating clergyman” is being a “full-time, ordained member of the clergy who presides over an established church’s ecclesiastical services.”
A Second Job
On the issue as to whether an officiating clergyman can also be employed full-time or part-time weekdays as a teacher by an unrelated religious entity, the Court in Matter of Word of Life Ministries (supra, 3 NY3d at 460) stated that “[t]hose lower courts that have addressed the issue have uniformly applied the correct test,” specifically referring to Temple Beth Sholom, Inc. of Roslyn, N.Y. v Nassau County Dept. of Assessment (6 Misc 3d 1002[A], 2001 NY Slip Op 50147[U] [Sup Ct, Nassau County 2001]). The Court of Appeals stated that in Sholom (supra), an
“assistant rabbi was held to be officiating clergy where he was employed full time by the synagogue; conducted secondary services on Sabbath and all holidays; taught Sisterhood and Men’s Club classes during the year; supervised youth groups; conducted weddings, funerals and baby namings when the rabbi was not available; and visited members [of the synagogue] in hospitals and homes, after the death of family members” (Matter of Word of Life Ministries, 3 NY3d at 460 [emphasis added]).
No Outside Employment
The Court then held in Matter of Word of Life Ministries (supra, 3 NY3d at 460-461) that
“[a] 11 of the pastors, including those living at the residences in question, were ordained and held no outside employment. All took part in church services and shared in the preaching. All provided marital counseling, officiated at marriages and funerals, and administered the sacraments recognized by the church. They also ministered to the youth of the church and took part in outreach to the homeless . . . Because the pastors’ salaries are low, respondent provides them with housing, located near the church. We thus reject the Village’s argument that the residents in question are not officiating clergy”
*281 (emphasis added).
Rahbi Is Not an Officiating Clergyman
The Court of Appeals in Matter of Word of Life Ministries (supra) did not limit a petitioner congregation to a single exemption only for its most senior or supervising clergy, finding that multiple full-time, officiating clergymen would each be entitled to the exemption for their residences, holding that if the individual clergy each fulfilled the functions of a full-time, ordained officiant, they each met the test. However, each of the pastors in question was a full-time employee who held no outside employment.
Substantial Outside Employment
The fact that the pastors in question were not employed outside of the church appears to have been one of the main factors in upholding the exemption. It therefore appears to be a fundamental requirement that the officiating clergy hold no substantial outside employment. Rabbi Hakakian works five days a week as a full-time special education teacher at Yeshiva of North Jersey, earning a salary of approximately $74,000 per year. It is difficult for this court to accept that the rabbi is able to also fulfill duties as a full-time rabbi, 40 to 45 hours per week as he has stated. Clearly, his substantial outside employment makes it highly unlikely, if not impossible, for the rabbi to meet the necessary requirement of being an officiating clergyman for purposes of receiving a RPTL 462 exemption.
Accordingly, since petitioner has not met its burden under RPTL 420-a (1) (a) or 462, the petitioner is not entitled to a real property tax exemption for the subject property.

. See e.g., Miriam Osborn Mem. Home Assn. v Assessor of City of Rye, 14 Misc 3d 1209(A), 2006 NY Slip Op 52461(U) (2006) (charitable use tax exemption denied; partial hospital use tax exemption granted); Jewish Inspiration Inc. v Assessor, Town of Ramapo, 12 Misc 3d 1169(A), 2006 NY Slip Op 51110(U) (Sup Ct, Rockland County 2006) (no congregation existed and purpose of petitioner was to promote and sell tapes not to run a house of worship); Matter of Gemilas Chasudim Keren Eluzer Inc. v Assessor of Town of Ramapo, 5 Misc 3d 1026(A), 2004 NY Slip Op 51566(U) (Sup Ct, Rockland County 2004) (Free Loan Society seeks tax exemption pursuant to RPTL 420-a); Matter of Congregation Sherith Yisroel Vilednik v Town of Ramapo, 5 Misc 3d 1027(A), 2004 NY Slip Op 51589(U) (Sup Ct, Rockland County 2004) (motion seeking to depose the tax assessor denied); Miriam Osborn Mem. Home Assn. v Assessor of City of Rye, 6 Misc 3d 1035(A), 2005 NY Slip Op 50307(U) (2005) (burden of proof under RPTL 420-a; charitable exemption; hospital exemption); Salvation & Praise Deliverance Ctr., Inc. v Assessor of City of Poughkeepsie, 6 Misc 3d 1021(A), 2005 NY Slip Op 50147(U) (Sup Ct, Dutchess County 2005) (bar claim action granted; RPTL article 7 petition moot); Matter of Adult Home at Erie Sta. Inc. v Assessor of City of Middletown, 8 Misc 3d 1010(A), 2005 NY Slip Op 51010(U) (Sup Ct, Orange County 2005) (posttrial decision on valuation and tax exemption of adult home); Matter of Congregation Knesset Israel v Assessor of Town of Ramapo, 8 Misc 3d 1021(A), 2005 NY Slip Op 51218(U) (Sup Ct, Rockland County 2005) (RPTL 462; officiating clergy); Otrada, Inc. v Assessor of Town of Ramapo, 9 Misc 3d 1116(A), 2005 NY Slip Op 51567(U) (Sup Ct, Rockland County 2005) (restoration of 100% tax exemption pursuant to RPTL 420-a), rearg granted 11 Misc 3d 1058(A), 2006 NY Slip Op 50279(U) (Sup Ct, Rockland County 2006).

. The court allowed an amendment to the complaint permitting the petitioner to plead that it is entitled to an RPTL 462 exemption as well as an RPTL 420-a exemption (trial transcript at 2-3).

. Trial exhibit A.

. Trial exhibit G.

. Trial transcript at 20-21.

. Trial transcript at 21.

. Trial transcript at 28.

. Trial transcript at 28.

. Trial transcript at 34.

. Trial transcript at 22-24.

. Trial transcript at 23-25, 50-52.

. Respondents’ posttrial memorandum dated Oct. 25, 2006 (respondents’ mem) at 6.

. Petitioner’s posttrial memorandum of law dated Dec. 11, 2006 (petitioner’s mem) at 3.

. Petitioner’s mem at 4.

. Respondents’ mem at 4.